UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 09-20223
                                       HONORABLE VICTORIA A. ROBERTS

v.

ALAN SILBER, M.D.,

        Defendant(s).
_____/

## ORDER DENYING DEFENDANT'S MOTION IN LIMINE

**I.    BACKGROUND**

On December 10, 2009, the Government filed a First Superseding Indictment against Defendant Dr. Alan Silber. Dr. Silber is charged with: (1) Health Care Fraud Conspiracy, in violation of 18 U.S.C. §1349 (Count I); and (2) Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Counts II-VII).

The General Allegations section of the Indictment says:

          .  .  .

7.     RDM Center ("RDM") was a Michigan corporation, purportedly doing business at 5820 N. Liley Road, Canton, Michigan. RDM was a medical clinic that purported to specialize in treating patients by providing infusion and injection therapy.

8.     Defendant ALAN SILBER, a resident of Wayne County, Michigan, was a medical doctor who was employed by RDM.

          .  .  .

11.    From in or about December 2006 through in or about March 2007, RDM submitted claims to Medicare under the provider number of defendant ALAN SILBER.

1

The Government incorporates the General Allegations into Count I, and further alleges:

12. [T]he defendants, ALAN SILBER, WILLIAM REEVES, and LARRY DICKERSON, did knowingly and willfully combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to violate [18 U.S.C. §1347], that is, to execute a scheme and artifice to defraud . . . Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, [Medicare], in connection with the delivery of and payment for health care benefits, items, and services.

## PURPOSE OF THE CONSPIRACY

13. It was the purpose of the conspiracy for ALAN SILBER, WILLIAM REEVES, and LARRY DICKERSON, and their co-conspirators, to unlawfully enrich themselves by . . . (a) submitting false and fraudulent claims to Medicare; (b) offering and paying cash kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for medically unnecessary infusion and injection therapy services and other services; [and] (c) soliciting and receiving kickbacks and bribes in return for arranging for the furnishing of services for which payment may be made by Medicare by providing their Medicare beneficiary numbers, which formed the basis of claims filed for infusion and injection therapy and other services[.]

## MANNER AND MEANS
. . .

18. ALAN SILBER completed a reassignment of benefits form, CMS Form 855R, to reassign to RDM payments for services billed to Medicare under his provider number.
. . .

22. ALAN SILBER ordered tests, made entries in medical records, and authorized treatments for beneficiaries without regard to medical necessity.
. . .

24. The owners and operators of RDM, along with ALAN SILBER and

their co-conspirators, caused the submission of approximately $970,316 of false and fraudulent claims to Medicare under the provider number of ALAN SILBER, seeking reimbursement for the costs of infusion and injection therapy and other services that were not medically necessary and were not provided.

In Counts II-VII, the Government alleges:

28. It was the purpose of the scheme and artifice for [Dr. Silber] and his co-conspirators to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for medically unnecessary and non-rendered infusion and injection therapy and other services.

Dr. Silber is not charged in Count VIII - Conspiracy to Pay and Receive Health Care Kickbacks, in violation of 18 U.S.C. §371.

Dr. Silber filed a "Motion in Limine and Brief to Exclude Improper 'Bad Acts' Evidence; Unreasonably Prejudicial Evidence; and Improper Constructive Amendment Evidence." (Doc. #120). Dr. Silber asks the Court to preclude the Government from introducing alleged drug dealing evidence, and the cost of each infusion therapy service.

The Government responded on March 17, 2010.

On March 20, 2010, Dr. Silber filed a "Reply to Plaintiff's Response to Defendant's Motion in Limine [and] Request for Extension of Page Limit." The Court **GRANTS** Dr. Silber's request that the Court consider its over the page limit Reply.

Dr. Silber's motion is **DENIED**.

## II. APPLICABLE LAW AND ANALYSIS

### A. Alleged Drug Dealing Evidence

Co-Defendant Larry Dickerson's Rule 11 Plea Agreement says:

3

> [Dickerson] was recruited to go to RDM Center by a co-conspirator, William Reeves, in order to sign paperwork indicating that he had received infusions and injections of specialty medications which he did not in fact receive. In exchange, co-conspirators, including Reeves, paid [Dickerson] kickbacks in the form of cash and/or **prescriptions for narcotic drugs provided by co-conspirator Alan Silber**.

(Emphasis added).

Co-Defendant Jose Martinez's Rule 11 Plea Agreement says:

> [Jose Martinez] hired co-conspirator William Reeves to recruit patients and gave Reeves money to pay kickbacks. In exchange for their kickbacks, the Medicare beneficiaries would visit the clinic and sign documents indicating that they had received the services billed to Medicare. **Kickbacks came in the form of cash and prescriptions for controlled substances**.

(Emphasis added).

An FBI 302 from an interview of co-Defendant Denisse Martinez on August 12, 2009 says:

> Denisse recalled a conversation she had with Dr. Silber while standing next to each other at RDM. **Dr. Silber told Denisse that all the patients used Vicodin and he needed to prescribe Vicodin to . . . them** because if he did not, they would not return to RDM.

(Emphasis added).

Dr. Silber says this alleged drug dealing evidence constitutes a constructive amendment and/or fatal variance, is unfairly prejudicial, and violates Fed. R. Evid. 404(b).

### 1. Constructive Amendment and Fatal Variance

Dr. Silber says the alleged drug dealing evidence constitutes a constructive amendment of the charges in the Indictment, or a fatal variance; it establishes that he violated 21 U.S.C. §841 – Unlawfully Distributing or Dispensing a Controlled Substance

4

– an offense that was not presented to the Grand Jury. Further, Dr. Silber says the Indictment does not put him on notice that the Government will present evidence that he signed prescriptions for controlled substances.

The Grand Jury clause of the United States Constitution says: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]". U.S. Const. amend. V.

> A constructive amendment of the charges in an indictment can occur when the evidence at trial establishes the commission of an offense not charged in the indictment. In other words, the proofs may broaden the possible bases for a conviction from those considered by the grand jury. Because a defendant could be convicted on allegations which were neither presented to the grand jury nor charged in the indictment, the constructive amendment of an indictment constitutes a per se violation of the fifth amendment grand jury clause, requiring reversal of a conviction.

*United States v. Mandell*, 722 F.Supp. 1208, 1212 (E.D. Pa. 1989) (citations omitted).

A fatal variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the Indictment. *See United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986).

The Government is not introducing the alleged drug dealing evidence which Dr. Silber quarrels with, to establish that he violated 21 U.S.C. §841. Nor is the Government required to charge Dr. Silber with that crime, even if his alleged conduct of signing prescriptions for controlled substances, constitutes a violation of 21 U.S.C. §841. Similarly, Dr. Silber does not have to be charged in Count VIII – Conspiracy to Pay and Receive Health Care Kickbacks. *See United States v. Hearn*, 1990 WL 16944 at *6 (6th Cir. Feb. 26, 1990) ("All co-conspirators need not be charged in every substantive count contained in an indictment") (citing *Schaffer v. United States*, 362

U.S. 511, 513 (1960)).

Finally, the Government's alleged drug dealing evidence will not prove facts materially different from those alleged in the Indictment; the Government intends to introduce the evidence to prove its allegation that Dr. Silber knowingly defrauded Medicare, and its allegation that to advance the charged conspiracy, the Defendants provided Medicare beneficiaries "kickbacks and bribes" – which included controlled substances – in exchange for their Medicare beneficiary numbers.

While Dr. Silber is correct that the Indictment does not mention that he signed prescriptions as a means to advance the conspiracy, the Indictment need not be that detailed.  *See* Fed. R. Crim. P. 7(c)(1):

> The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.  It need not contain a formal introduction or conclusion.  A count may incorporate by reference an allegation made in another count.  A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.

*See also United States v. Clark*, 2006 WL 2033981 at *1 (E.D. Mich. July 18, 2006) ("the 'Manner and Means' section is an optional part of the indictment") (citing Fed. R. Crim. P. 7(c)(1)).

The Court finds that the alleged drug dealing evidence is neither a constructive amendment of, nor a fatal variance to, the Indictment.

### 2. Unfairly Prejudicial

Fed. R. Evid. 401 says: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

6

> All relevant evidence is admissible, except as otherwise provided by the
> Constitution of the United States, by Act of Congress, by these rules, or by
> other rules prescribed by the Supreme Court pursuant to statutory
> authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402. Fed. R. Evid. 403 excludes relevant evidence that is more prejudicial than probative, or that will confuse the issues: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues[.]"

Dr. Silber's state of mind is an element of Heath Care Fraud. See 18 U.S.C. §1347 (a defendant must knowingly and willfully defraud a health care benefit program). The Government anticipates that Dr. Silber's defense at trial will be that he did not knowingly participate in a scheme to defraud Medicare. The alleged drug dealing evidence would be probative of Dr. Silber's knowledge that RDM was not a legitimate business, but was only established to maximize Medicare reimbursements. Specifically, evidence that Dr. Silber allegedly signed prescriptions for high street value drugs that were provided to drug addicts, when the medication was medically unnecessary, would be probative of whether Dr. Silber knowingly defrauded Medicare.

In addition, the alleged drug dealing evidence is relevant to the Government's claim that Dr. Silber willfully conspired to defraud medicare: the Government theorizes that Dr. Silber's signature on prescriptions for controlled substances supplied as kickbacks kept Medicare beneficiaries in the fold, and allowed RDM continued access to the beneficiary numbers needed to file false claims with Medicare.

Dr. Silber contends, too, that such evidence will be inflammatory, and cause the jury to see him as a "drug dealer" with a propensity to commit crimes. Proper instruction

from the Court should address these concerns.

The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Dr. Silber can cross-examine Government witnesses concerning the legitimacy of the prescriptions. The jury can then determine the weight to give the alleged drug dealing evidence.

Finally, co-conspirators' statements are not hearsay, if they are corroborated. *See* Fed. R. Evid. 801(d)(2)(E):

> A statement is not hearsay if [t]he statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered[.]

### 3. Fed. R. Evid. 404(b)

Fed. R. Evid. 404(b) says:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Dr. Silber asks the Court to exclude the Government's alleged drug dealing evidence because the Government does not identify a proper purpose for its admission under Fed. R. Evid. 404(b). Dr. Silber says this evidence is only intended to attack his character as a "drug dealer."

Dr. Silber's reliance on Rule 404(b) is misplaced; the evidence he objects to, is intrinsic evidence of the alleged Health Care Fraud Conspiracy, not "other crime evidence" within the meaning of 404(b). *See United States v. Barnes*, 49 F.3d 1144,

8

1149 (6th Cir. 1995):

> When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts, on the other hand, are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity.

*See also United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001) ("Rule 404(b) is not applicable where the challenged evidence is 'inextricably intertwined' with evidence of the crime charged") (citing *United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995)).

### B. Cost of Each Infusion Therapy Service

Dr. Silber says the cost of each infusion therapy service – $3,000.00 to $5,000.00 – is unfairly prejudicial; he did not share in the proceeds that his co-conspirators received, and the Government has other means to prove the infusion therapy service was medically unnecessary.

Regardless of the amount of money Dr. Silber received for participating in the conspiracy, the Court finds the cost of infusion therapy services is relevant to the Government's allegations that Dr. Silber: (1) conspired to obtain money from Medicare; (2) joined the conspiracy to enrich himself; and (3) submitted approximately $970,316.00 of false claims to Medicare in a short time frame (December 2006 - March 2007).

The fact that infusion therapy services is expensive supports an inference that this service was selected based on how much money the co-conspirators could receive from Medicare, and that Dr. Silber knew that the purpose of the conspiracy was to maximize the amount of money RDM received from Medicare.

The probative value of this evidence is not substantially outweighed by the

9

danger of unfair prejudice.

## III. CONCLUSION

Dr. Silber's motion is **DENIED**. The Government may introduce alleged drug dealing evidence, and the cost of each infusion therapy service.

However, the Government may not argue or present evidence that Dr. Silber was one of the co-conspirators who actually provided cash or controlled substances, to the Medicare beneficiaries, as kickbacks. He is not charged in Count VIII – Conspiracy to Pay Health Care Kickbacks.

**IT IS ORDERED**.

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: March 23, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 23, 2010.
>
> s/Carol A. Pinegar
> Deputy Clerk